NUMBER 13-06-386-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JORGE E. MIRANDA, Appellant,


v.



GUADALUPE ADRIANA

MARTINEZ, Appellee.

 


On appeal from the 389th District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Benavides, and Vela


Memorandum Opinion by Justice Yañez


 

Appellant, Jorge E. Miranda, M.D., challenges the trial court's denial of his motion to
dismiss the claim filed by appellee, Guadalupe Adriana Martinez, for failure to provide an
expert report and curriculum vitae within the 120-day statutory period. (1) We reverse and
remand.

Factual Summary

 In her original petition, filed on January 24, 2006, Martinez alleged that she incurred
severe bodily injuries after Dr. Miranda negligently left a surgical sponge in her body when
he assisted in delivering her baby by C-section. The sponge was discovered and removed
from Martinez's body approximately four months later when she returned to the hospital
complaining of abdominal pain. Martinez filed an expert's report on May 18, 2006. The
report, prepared by Dr. William R. Beaty, M.D., is included in the appellate record. Dr.
Miranda asserted that the report as prepared and produced was deficient for a variety of
reasons, including substantive defects as to the form and content of the report. He
contended that because it did not comport with the requirements of section 74.351 of the
civil practice and remedies code, the cause against him should be dismissed pursuant to
subsection (b)(2). (2)

 Dr. Miranda moved to dismiss Martinez's claim against him. The court conducted
a hearing to address the adequacy of the report on June 20, 2006. At the hearing, Dr.
Miranda argued, as he does now on appeal, that the report was deficient because "it failed
to set forth the applicable standard of care for Dr. Miranda; failed to state how Dr. Miranda
allegedly breached the standard of care; and wholly failed to explain any causal connection
between the alleged deviation from the unstated applicable standard of care and
[Martinez's] alleged injuries." He also argued that the purported expert's curriculum vitae
was not included with the report. Martinez's counsel argued that the tendered report
should be considered a good faith effort to comply with the requirements of section
74.351. (3) After a hearing on the issue, the trial court denied Dr. Miranda's motion.

The Statute

 Chapter 74 of the Texas Civil Practice and Remedies Code currently governs
medical tort liability in Texas. (4) In order to encourage the screening of medical malpractice
claims by an expert prior to filing, Chapter 74 requires a plaintiff to provide each defending
physician or health care provider with one or more expert reports relating to liability and
causation. (5) The expert report, along with a curriculum vitae for each expert, must be
furnished to the defendant not later than the 120th day after the date on which a health
care liability claim is filed or the last day of any extended period as permitted under the
statute. (6) If a plaintiff fails to comply with this provision, then a trial court shall, on the
motion of the defendant, award the defendant reasonable attorneys' fees and costs of
court incurred by the defendant, and dismiss the claim with respect to the defendant, with
prejudice to the refiling of the claim. (7) The trial court is authorized to grant a motion to
dismiss only if it appears to the court, after a hearing, that the report does not represent
a good faith effort to comply with the definition of an expert report in subsection (r)(6). (8)

Standard of Review

 We review a trial court's decision regarding the adequacy of an expert report under
an abuse of discretion standard. (9) "A trial court abuses its discretion if it acts in an arbitrary
or unreasonable manner without reference to any guiding rules or principles." (10) A trial court
also abuses its discretion if it fails to analyze or apply the law correctly. (11)

Discussion

 One basis for dismissal asserted by Dr. Miranda was that the expert report failed to
include the expert's curriculum vitae, which was not provided until after 120 days had
passed from the date Martinez filed her original petition. (12) Dr. Miranda thus asserts that
Martinez failed to comply with the requirements of section 74.351, and as a result, the trial
court should have dismissed Martinez's claim with prejudice. (13)

 The language of section 74.351 is unambiguous; it states that a claimant shall
provide a defendant with a curriculum vitae for each expert listed in a report no later than
the 120th day after the date the original petition was filed. (14) At the hearing on Dr.
Miranda's motion to dismiss, the trial court needed to assess whether Martinez had
complied with section 74.351 based solely on the evidence she provided within the 120-day period. (15) In Carreras v. Marroquin, we stated that the "purpose of the curriculum vitae
requirement is to permit the trial court to perform its 'gatekeeper' function by assessing the
qualifications, experience, and expertise of the expert." (16) We went on to say that a
claimant could be excused from separately serving a curriculum vitae if the information
commonly contained within it was incorporated into the body of the report. (17)

 Upon reviewing Dr. Beaty's report, we find that the only information it provides about
its author is contained within the report's letterhead. The letterhead states "William R.
Beaty, M.D., F.A.C.O.G." and "Gynecology & Gynecologic Surgery." In her brief, Martinez
asserts that the trial court was able to take judicial notice that the acronym "F.A.C.O.G."
stands for "Fellow of the American College of Obstetricians and Gynecologists," thus
sufficiently establishing that Dr. Beaty is qualified to testify about standards applicable to
gynecological surgery. (18)

 In Broders v. Heise, the Texas Supreme Court stated that "given the increasingly
specialized and technical nature of medicine, there is no validity, if there ever was, to the
notion that every licensed doctor should be automatically qualified to testify as an expert
on every medical question." (19) The supreme court held that an offering party is required to
"establish that the expert has 'knowledge, skill, experience, training, or education' regarding
the specific issue before the court which would qualify the expert to give an opinion on that
particular subject." (20)
 In reaching its holding in Broders, the supreme court noted that its
focus--as to "whether the expert's expertise goes to the very matter on which he or she
is to give an opinion"--was shared by federal courts. (21) The supreme court then cited to a
number of federal cases as examples of this shared focus, including two cases which
generally held that a doctor should not be considered an expert simply because of his
certification in a medical specialty. (22)

 In a suit against a physician, the expert report required by section 74.351 is a written
report by an expert qualified to testify under the requirements of section 74.401, which
mandates the witness: (1) be practicing medicine at the time of his testimony or at the time
the claim arose; (2) have knowledge of the accepted standards of care for the diagnosis,
care, or treatment of the condition involved in the claim; and (3) be qualified on the basis
of training or experience to offer an expert opinion on those accepted standards of care. (23) 
Section 74.401(c) provides a court with factors it is to consider in determining whether a
witness's training or experience qualifies the witness as an expert under Chapter 74. (24) The
factors are whether, at the time the claim arose or when testimony is given, the witness (1)
is board certified or has other substantial training or experience in an area of medical
practice relevant to the claim, and (2) is actively practicing medicine rendering medical care
services relevant to the claim. (25)

 In light of Broders and the express requirements in section 74.401, it cannot be said
that Martinez provided the trial court with nearly sufficient information by which to assess
that the written report was authored by an expert. Martinez, by simply informing the trial
court that the author was a doctor with a specialty in either gynecology or obstetrics (or
both), did not address any of the factors that ultimately determine whether one is a
qualified expert--i.e., knowledge, skill, experience, training, and education. (26) 

 From reading Dr. Beaty's report, one cannot tell whether she (1) is actively
practicing medicine; (2) was performing medicine at the time of her testimony or at the time
the claim arose; (3) has knowledge of the accepted standards for the diagnosis, care, or
treatment of the condition involved in the claim; or (4) is qualified on the basis of training
or experience to offer an expert opinion on accepted standards of care. This information,
as previously discussed, is necessary for determining whether one is qualified to testify as
an expert under the requirements of section 74.401. Without this information, the trial
court could not assess Dr. Beaty's qualifications, experience, and expertise; therefore, the
court was unable to competently perform its "gatekeeper" function. Accordingly, we find
the trial court abused its discretion in not finding the report deficient. (27)

May the Trial Court Consider Granting an Extension?

 Dr. Miranda asserts that we should reverse the order of the trial court and render
an order that dismisses Martinez's claim with prejudice. This assertion is predicated upon
section 74.351(b)(2), which generally states that if an expert report has not been served
by the 120th day after the date the original petition was filed, a court shall dismiss the claim
with prejudice. (28) Subsection (b), however, is subject to subsection (c), which states that
when an expert report has not been served within the 120-day period "because elements
of the report are found deficient, the court may grant one 30-day extension to the claimant
in order to cure the deficiency." (29) This provision appears to serve as an after-the-fact
extension, a second chance at getting the report right. (30) That is, the claimant must still
serve the expert report by the 120-day deadline, but if the trial court determines the
timely-filed report is deficient, it may grant an extension in which the claimant may cure
any deficiencies in the report. (31)

 In the instant case, an expert report was filed within the 120-day deadline. As a
result, even if the trial court had determined that the expert report was deficient for all the
reasons asserted by Dr. Miranda, the court nonetheless had the authority to grant Martinez
a 30-day extension in order to cure those deficiencies. (32) We note that although Martinez
did not request a 30-day extension either in her response to Dr. Miranda's motion to
dismiss or at the hearing, the trial court had the discretion to grant a 30-day extension
without the necessity of a formal request, and no appeal could have been taken from that
order. (33) The trial court still has that discretion. (34)

Conclusion

 We reverse the trial court's order denying Dr. Miranda's motion to dismiss and
remand for further proceedings consistent with this opinion. (35)



 

 LINDA REYNA YAÑEZ,

 Justice





Memorandum opinion delivered and filed 

this the 8th day of March, 2007.
1. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon 2006). Unlike the instant case, medical
malpractice cases filed prior to September 1, 2003 are governed by former article 4590i. See Act of May 30,
1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039 (formerly codified at Tex. Rev. Civ. Stat. Ann. art.
4590i, §§ 1.01-16.02), repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen.
Laws 864, 884. Upon the repeal of article 4590i, the relevant sections governing expert reports were
recodified with amendments in chapter 74 of the civil practice and remedies code. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351 (Vernon 2006).
2. Id. § 74.351(b)(2).
3. Id.
4. Id. §§ 74.001-.507.
5. Id. § 74.351(i).
6. Id. § 74.351(a), (c).
7. Id. § 74.351(b).
8. Id. § 74.351(l).
9. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001).
10. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).
11. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).
12. For clarity, we list herein, in chronological order, the dates and events that are relevant to this
discussion: (1) Martinez filed her original petition on January 24, 2006; (2) Martinez served the expert report
on May 18, 2006; (3) the last day, under section 74.351(a), that Martinez could serve her expert report and
curriculum vitae was on May 24, 2006; (4) Dr. Miranda objected to the expert report on May 26, 2006; (5)
Martinez served the curriculum vitae on June 1, 2006; and (6) the court held a hearing on Dr. Miranda's
motion to dismiss and denied the motion on June 20, 2006.
13. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b) (Vernon Supp. 2006).
14. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon 2006).
15. The trial court was thus precluded from considering Martinez's late-filed curriculum vitae while
making this determination, even though it was before the trial court at the time of the hearing.
16. Carreras v. Marroquin, No. 13-05-082-CV, 2005 Tex. App. LEXIS 8269 at *5 (Tex. App.-Corpus
Christi Oct. 6, 2005, pet. filed) (not designated for publication).
17. Id. at *5-6.
18. We note that at the hearing on Miranda's motion to dismiss, Martinez did not request for the trial
court to take judicial notice of what the acronym "F.A.C.O.G." represented. Neither the acronym, or any other
part of the letterhead, was discussed at the hearing or in "Plaintiff's Response to Defendant's Motion to
Dismiss."
19. Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996).
20. Id. at 153 (citing Ponder v. Texarkana Mem'l Hosp., 840 S.W.2d 476, 477-78 (Tex. App.-Houston
[14th Dist.] 1991, writ denied)).

21. Id.
22. Id. The supreme court cited Nunley v. Kloehn, 888 F. Supp. 1483, 1488 (E.D. Wis. 1995) ("The
focus, then, is on the 'fit' between the subject matter at issue and the expert's familiarity therewith, and not
on a comparison of the expert's title or specialty with that of the defendant or a competing expert."), and
O'Conner v. Commonwealth Edison Co., 807 F. Supp. 1376, 1390 (C.D. Ill. 1992) ("No medical doctor is
automatically an expert in every medical issue merely because he or she has graduated from medical school
or has achieved certification in a medical specialty.").
23. Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a) (Vernon 2006).
24. Id. § 74.401(c).
25. Id.
26. See Broders, 924 S.W.2d at 153.
27. Based on the reasoning still to follow, we decline to address Dr. Miranda's remaining arguments
on appeal. Our decision to abstain from addressing these arguments should not be interpreted as a reflection
of our disagreement with them. We emphasize that we have not subjected the contents of Martinez's expert
report to the scrutiny exhibited in Palacios. 46 S.W.3d 873, 878-79.
28. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon 2006).
29. Id. § 74.351(c) (emphasis added).
30. Thoyakulathu v. Brennan, 192 S.W.3d 849, 852 (Tex. App.-Texarkana 2006, no pet.). 
31. Id.
32. Nothing in the record indicates that the trial court has previously granted Martinez a 30-day
extension.
33. See Foster v. Zavala, No. 11-05-00315-CV, 2006 Tex. App. LEXIS 10887 at *28 (Tex.
App.-Eastland Dec. 21, 2006) (no pet. hist.) (not designated for publication).
34. We take time to comment on Dr. Miranda's use of the Texas Supreme Court's decision in Palacios, 
through which he asserts the trial court erred in declining to dismiss Martinez's claim with prejudice. Palacios,
46 S.W.3d 873. There is a pivotal distinction between the instant case and Palacios that Dr. Miranda does
not acknowledge. In Palacios, the defendant moved to dismiss the case against it, the plaintiffs then moved
for an extension of time to file, the extension was granted, and the defendants again moved for dismissal,
which the trial court granted. Id. at 876. When the case finally reached the supreme court, the trial court was
no longer at liberty to grant a 30-day extension.
35. In his brief, Dr. Miranda seeks an award of costs. Because we are remanding the case to the trial
court so that the court may exercise its discretion in determining whether or not to afford Martinez a 30-day
extension, a determination of entitlement to costs would be premature.